# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RONALD NIEPORTE,
Individually,
      Plaintiff,

V

CITIMORTGAGE, INC.
a foreign for profit corporation,
TROTT & TROTT, P.C.,
a Michigan corporation,
FEDERAL HOME LOAN MORTGAGE CORPORATION,
(Freddie Mac)
GTL LLC, a domestic limited liability company,

    Jointly and severally,

    Defendants.

Case No.
Hon.

Lower Court Case No. 10-4940-CH
Hon.  John C. Foster

---

**NOTICE OF REMOVAL**

---

| | |
|---|---|
| THE MORAN LAW FIRM<br>Valerie A. Moran (P56498)<br>Attorney for Plaintiff<br>115 N. Center Street, Suite 203<br>Northville, MI 48167<br>(248) 465-9400<br>vmoranatty@aol.com | TROTT & TROTT, P.C.<br>Richard Welke (P44403)<br>Counsel for Defendants, TROTT &<br>TROTT, P.C., and FEDERAL HOME<br>LOANS MORTGAGE<br>CORPORATION<br>31440 Northwestern Hwy., Ste. 200<br>Farmington Hills, MI 48334<br>(248) 723-5765<br>rwelke@trottlaw.com |
| DYKEMA GOSSETT PLLC<br>K.J. Miller (P62014)<br>Attorneys For Defendant<br>CitiMortgage, Inc.<br>2723 South State Street, Suite 400<br>Ann Arbor, Michigan 48104<br>(734) 214-7678<br>kmiller@dykema.com | HONIGMAN MILLER SCHWARTZ<br>& COHN<br>Gregory DeMarrs (P33578)<br>Attorneys for Defendant GJT<br>660 Woodward Avenue, Suite 2290<br>Detroit, Michigan 48226<br>(313) 465-7356<br>gjd@honigman.com |

## NOTICE OF REMOVAL

**TO:   THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

Pursuant to 28 U.S.C. §1442, and 12 U.S.C. §1452(f), Defendant, Federal Home Loan Mortgage Corporation ("Freddie Mac") hereby gives notice of the removal of this action from the Macomb County Circuit Court to the United States District Court for the Eastern District of Michigan, Southern Division.  As grounds for this removal, Freddie Mac shows unto the Court the following:

1.      Freddie Mac is a named defendant in this action filed by RONALD NIEPORTE on or about November 16, 2010 in the Macomb County Circuit Court.  The Complaint alleges various causes of action against Freddie Mac in connection with an alleged wrongful eviction following a mortgage foreclosure sale pertaining to certain real property located at 11073 Busch Ave. Warren, MI.

2.      Freddie Mac is a United States corporation chartered by an Act of Congress organized and existing under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. §1451, et seq., with its principal place of business located in McLean, Virginia.

3.      12 U.S.C. §1452(f) provides that Freddie Mac "shall be deemed to be an agency included in sections 1345 and 1442 of such title 28."  Section 1452(f) of Title 12 further provides, in pertinent part, that any civil action in a state court to which Freddie Mac is a party may, at any time before trial, be removed to the United States District Court embracing the place where the action is pending.

4.     28 U.S.C. §1442(a) does not require Freddie Mac to notify or obtain the consent of any other defendant in this action in order to remove the entire case to federal court.  See 28 U.S.C. §1442(a); Durham v Lockheed Martin Corp., 445 F. 3d 1247, 1253 (9th Cir. 2006) (stating that "[w]hereas all defendants must consent to removal under section 1441…a federal officer or agency defendant can unilaterally remove a case under section 1442…") (citations omitted); Ely Valley Mines, Inc., v Hartford Accident & Indemnity Co., 644 F. 2d 1310, 1315 (9th Cir. 1981) (stating that §1442 represents an exception to the general rule (under §1441 and §1446) that all defendants must join in the removal petition).

5.     Freddie Mac is a party to the State Court Action as referenced above, and no trial of the action has yet taken place.  The United States District Court for the Eastern District of Michigan, Southern Division, is the federal judicial district and division embracing the Macomb County Circuit Court, where this action was originally filed.  See 28 U.S.C. §81(a)(3).

6.     Freddie Mac is therefore entitled to remove that action to this Court.  Copies of all records and proceedings served upon this defendant in the State Court Action in the Macomb County Circuit Court, County of Macomb, State of Michigan.

7.     Concurrently with the filing of this Notice of Removal, by means of the Notice of Filing of Notice of Removal filed in the State Court Action and attached hereto as Exhibit A, Freddie Mac is giving written notice to all known parties, and to the Clerk of the Macomb County Circuit Court, State of Michigan, of (i) this removal; (ii) the fact that this case is to be docketed in this Court; and (iii) that this Court shall hereafter be entitled to grant all relief to Freddie Mac as is proper under the circumstances, all in accordance with 12 U.S.C. §1452 and such local rules as may be applicable.

/s/ RichardWelke
Richard Welke (P44403)
TROTT & TROTT, P.C.
Attorney for Federal Home Loan
Mortgage Corporation
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
(248) 723-5072
rwelke@trottlaw.com

Dated:  March 9, 2011

## CERTIFICATE OF SERVICE

**Sabrina R. Adams** hereby certifies that on   March 9, 2011, she mailed a copy of

*Notice of Removal* and this *Proof of Service* via Federal Express to:

THE MORAN LAW FIRM
Valerie A. Moran, Esq.
Attorney for Plaintiff
115 N. Center Street, Suite 203
Northville, MI 48167

DYKEMA GOSSETT PLLC
K.J. Miller, Esq.
2723 South State Street, Suite 400
Ann Arbor, Michigan 48104

HONIGMAN MILLER SCHWARTZ &
COHN
Gregory DeMarrs, Esq.
660 Woodward Avenue, Suite 2290
Detroit, Michigan 48226

I declare under the penalty of perjury that the statement above is true to the best of

my information, knowledge, and belief.

/s/ Sabrina R. Adams
Sabrina R. Adams, Legal
Assistant
Trott & Trott, P.C.

Dated:  March 9, 2011

L:\Karolyn\Richard.Welke\Nieporte, Ronald 227821L05\Notice Of Removal 3-9-2011.Final.Doc

4

## 2010-004940-CH NIEPORTE, RONALD vs. CITIMORTGAGE INC JCF

| File Date | 11/16/2010 | Case Status | Open | Case Status Date | 11/16/2010 |
|---|---|---|---|---|---|

### Party Information

| Party Name | Party Alias(es) | Party Type | Attorney(s) | Attorney Phone |
|---|---|---|---|---|
| NIEPORTE, RONALD | | PLAINTIFF | MORAN, VALERIE A | |
| CITIMORTGAGE INC | | DEFENDANT | MILLER, KATHRYN J RAMIN, NASSEEM S | |
| TROTT & TROTT PC | | DEFENDANT | WELKE, RICHARD | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION (FREDDIEMAC | | DEFENDANT | | |
| GTJ LLC | | DEFENDANT | MARR, JILL L | |

### Case Schedule

| Date | Start Time | Event Type | Result |
|---|---|---|---|
| 03/24/2011 | 08:00 AM | EARLY DISPOSITION SETTLEMENT CONFERENCE | |

### Financial Entries

| Receipt # | Date | Received From | | Amount Paid |
|---|---|---|---|---|
| 428530 | 03/07/2011 | CITIMORTGAGE | | 10,00 |
| | **Payment** | | **Fee** | |
| | CREDIT CARD AMX | 10,00 | FILING FEE | 10,00 |
| 423236 | 02/14/2011 | NIEPORTE, RONALD | | 20,00 |
| | **Payment** | | **Fee** | |
| | Cash | 20,00 | MOTION FEE | 20,00 |
| 402867 | 11/16/2010 | NIEPORTE, RONALD | | 235,00 |
| | **Payment** | | **Fee** | |
| | Check | 235,00 | FILING FEE | 235,00 |

### Docket Entries

| Date | Text |
|---|---|
| 03/08/2011 | DISCOVERY AND CASE EVALUATION ORDER ISSUED (N) DISCOVERY ORDER MAILED TO RICHARD WELKE Sent on: 03/08/2011 14:19:16 |

03/07/2011 DISCOVERY AND CASE EVALUATION ORDER ISSUED (N) DISCOVERY ORDER MAILED TO JILL
  MARR Sent on: 03/07/2011 11:15:53
03/04/2011 PROOF OF SERVICE
03/04/2011 AFFIRMATIVE DEFENSES
03/04/2011 APPEARANCE (LITIGANT'S PRIMARY ATTORNEY) Attorney: WELKE, RICHARD (44403) TROTT &
  TROTT PC (DEFENDANT);
03/04/2011 ANSWER (LITIGANT'S PRIMARY ATTORNEY) Attorney: WELKE, RICHARD (44403) TROTT &
  TROTT PC (DEFENDANT);
03/04/2011 CERTIFICATE OF SERVICE
03/04/2011 AFFIRMATIVE DEFENSES
03/04/2011 ANSWER (LITIGANT'S PRIMARY ATTORNEY) Attorney: MARR, JILL L. (67725) GTJ LLC
  (DEFENDANT);
03/04/2011 FAX FILING FEE Receipt: 428530 Date: 03/07/2011
03/01/2011 PROOF OF SERVICE
03/01/2011 DEFENDANT CITIMORTGAGE INC'S FIRST REQUESTS FOR ADMISSION, INTERROGATORIES,
  AND REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFF
02/28/2011 CERTIFICATE OF SERVICE
02/28/2011 DEFENDANTS GTJ,LLC. PRELIMINARY WITNESS LIST
02/23/2011 PROOF OF SERVICE
02/23/2011 DEFENDANT CITIMORTGAGE INC'S WITNESS LIST
02/14/2011 PROOF OF SERVICE
02/14/2011 PLAINTIFF'S EXHIBIT LIST
02/14/2011 PLAINTIFF WITNESS LIST
02/14/2011 AFFIDAVIT
02/14/2011 PLTF BRIEF IN SUPPORT MTN FOR SUBST SERVICE & EXTENSION OF SUMMONS
02/14/2011 PLTF MTN FOR EXTENSION OF SUMMONS AS TO DEFT FREDDIE MAC
02/14/2011 MOTION FEE Receipt: 423236 Date: 02/14/2011
01/07/2011 (N) EVENT NOTICE SENT
01/07/2011 EARLY DISPOSITION SETTLEMENT CONFERENCE SCHEDULED Event: EARLY DISPOSITION
  SETTLEMENT CONFERENCE Date: 03/24/2011 Time: 8:00 am Judge: FOSTER, JOHN C Location:
  COURTROOM SW - 4TH FLOOR
12/30/2010 DISCOVERY & CASE EVAL ORDR SENT; CASE EVAL AFTR 4/29/11, S/D MTNS BY 7/28/11;
  WITNSS LST DUE BY: PLTF 2/14/11, DEFT 2/28/11 VALERIE A. MORAN (Attorney) on behalf of
  RONALD NIEPORTE (PLAINTIFF); NASSEEM S RAMIN (Attorney) on behalf of CITIMORTGAGE
  INC (DEFENDANT)
12/30/2010 DISCOVERY AND CASE EVALUATION ORDER ISSUED (N) DISCOVERY ORDER Sent on:
  12/30/2010 09:50:12
12/28/2010 PROOF OF SERVICE
12/28/2010 AFFIRMATIVE DEFENSES
12/28/2010 ANSWER (LITIGANT'S PRIMARY ATTORNEY) Attorney: RAMIN, NASSEEM S (73513)
  CITIMORTGAGE INC (DEFENDANT);
12/21/2010 PROOF OF SERVICE
12/21/2010 NOTICE OF APPEARANCE (2)
12/21/2010 APPEARANCE (LITIGANT'S SECONDARY ATTORNEY) Attorney: RAMIN, NASSEEM S (73513)
  CITIMORTGAGE INC (DEFENDANT);
12/21/2010 APPEARANCE (LITIGANT'S PRIMARY ATTORNEY) Attorney: MILLER, KATHRYN JEAN (62014)
  CITIMORTGAGE INC (DEFENDANT);
12/21/2010 APPEARANCE (LITIGANT'S PRIMARY ATTORNEY) Attorney: RAMIN, NASSEEM S (73513)
  CITIMORTGAGE INC (DEFENDANT);
12/10/2010 STIP/ORDER XTNDING DEFTS CITIMORTGAGE INC'S TIME TO ANSWER OR OTHERWISE
  RESPOND -SGD
11/16/2010 EXHIBIT(S) ATTACHED TO COMPLAINT
11/16/2010 SUMMONS ISSUED **EXP 2-15-11**
11/16/2010 JURY DEMAND
11/16/2010 COMPLAINT/PETITION FILED
11/16/2010 JURY FEE Receipt: 402867 Date: 11/16/2010
11/16/2010 ENTRY FEE Receipt: 402867 Date: 11/16/2010

Approved, SCAO

| | | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>10- 4940-CH |

| Court address | | Court telephone no. |

| Plaintiff name(s), address(es), and telephone no(s). | | Defendant name(s), address(es), and telephone no(s). |

Plaintiff name(s):
Ronald Nieporte

v

Defendant name(s):
Citimortgage Inc, a foreign corporation
Trott & Trott PC, a Michigan corporation
Federal Home loan Mortgage Corporation
GTS, LLC a Michigan limited
liability company

Plaintiff attorney, bar no., address, and telephone no.
Valerie Moran P56498
115 N. Center Street Suite 203
Northville MI 48167
248-465-9400

FOSTER
P23180

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>11-16-10 | This summons expires<br>2-15-11 | Court clerk<br>Carmela Sabaugh |

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**General Civil Cases**
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint/
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
| Place where action arose or business conducted | |

I declare that the **complaint information above and attached** is true to the best of my information, knowledge, and belief.

| Date<br>11/16/10 | Signature of attorney/plaintiff<br>Valerie A. Moran   P56498 |

If you require special accommodations to use the court because of disabilities, contact the court immediately to make arrangements.

MC 01   (9/98)   **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

COURT

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
      Individually
          Plaintiff,

-vs.-

                    Case No. 10-4940-CH
                    Hon.

CITIMORTGAGE INC.,
a foreign profit corporation,
TROTT & TROTT, P.C.,
a Michigan corporation,
Federal Home Loan Mortgage Corporation
(Freddie Mac)
GTJ LLC,
a domestic limited liability company
        Jointly and Severally,
           Defendants.



_____/

VALERIE A. MORAN (P 56498)
THE MORAN LAW FIRM
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI 48167
248-465-9400
_____/

### COMPLAINT AND JURY DEMAND

     NOW COMES, the Plaintiff, RONALD NIEPORTE, by and through his attorney, VALERIE

A. MORAN and for his Complaint state as follows:

          1.    Plaintiff RONDALD NIEPORTE (NIEPORTE) is a resident of the County

of Macomb, State of Michigan.

          2.    Defendant, CITIMORTGAGE, INC ("CITIMORTGAGE'), is upon

information and belief a foreign corporation conducting business in Macomb County,

Michigan.

          3.    Defendant TROTT & TROTT, P.C., (TROTT) is upon information and belief

a Michigan law firm, as well as, Michigan corporation conducting business in Macomb County, Michigan.

    4.    Defendant GTJ LLC ("GTJ"), is upon information and belief a Michigan limited liability company conducting business in Macomb County, Michigan.

    5.    Defendant, Federal Home Loan Mortgage Corporation (FREDDIEMAC), upon information and belief was a government sponsored enterprise, now in governmental receivership, conducting business in the County of Macomb, State of Michigan.

    6.    Plaintiff seeks an amount of damages over $25,000.00 as well as equitable relief.

    7.    The complained of injuries occurred within the County of Macomb, State of Michigan thus jurisdiction and venue are proper before this Court.

## GENERAL ALLEGATIONS

    8.    Plaintiff realleges and reincorporates each of the allegations contained in all preceding paragraphs as though fully restated herein.

    9.    Plaintiff was the owner of and had a certain piece of real property located at: 11073 Busch Ave. Warren Michigan. **(Exhibit 1: Mortgage Exhibit 2: Deed)**

    10.    While Plaintiff was the owner of the Property, he had granted a Mortgage to ABN AMRO Mortgage Group, Inc. (Exhibit 1) that was subsequently assigned, bought or otherwise transferred to Defendant Citimortgage and then subsequently assigned, bought or otherwise transferred to Defendant, Freddiemac.

    11.    Upon information and belief the mortgage loan was serviced by Defendant Citimortgage.

    12.    Plaintiff fell behind on his Mortgage payments, and the above referenced property

was sold at Sheriff Sale on July 10, 2009 in a foreclosure by advertisement with the assistance of Defendant Trott & Trott acting as their attorney.

13.    The redemption period was to expire on January 10, 2010.

14.    During the redemption period, Plaintiff occupied the property, which was his primary residence. On November 17, 2009, while Plaintiff was away at work, locks were removed and changed at the property, the water was shut off and disconnected, all the pipes were drained, and pipes as well as drains were treated with chemicals.

15.    During the course of the illegal acts of Defendants, Plaintiff lost thousands of dollars in tools and other personal property which were unlawfully removed from the property during Defendants unlawful entry into the property and unlawful interference with Plaintiff's possessory interest. Additionally, doors and locks at the property were removed or damaged in the course the of removing and changing the locks and the chemicals placed in pipes and drains in the home emitted a strong odor which penetrated Plaintiff's furniture, mattress, clothing and other personal items such that they could no longer be used for their intended purpose and had to be thrown away.

16.    The drains at the property were treated with chemicals which gave the entire property a severe chemical odor.

17.    When Plaintiff later retrieved his belongings, the chemical odor in the property was so strong it caused Plaintiff to suffer severe headaches and he could only be inside the home for short periods of time.

18.    Upon information and belief, lock out, possessory interference and removal of personal property was carried out by Defendant GTJ.

19.    Upon information and belief these acts were at the direction of, or with the knowledge

3

of, other Defendants.

20.     Upon information and belief the lock outs committed by lenders and their servicing companies, and agents often occur in mortgage foreclosures.

21.     In mortgage foreclosures, companies are often hired to act as "trash out" companies, i.e. to go into homes that are not redeemed and remove and discard personal property, to change the locks on the properties.

22.     These companies often also "winterize" or complete "property preservation" of the properties which includes shutting off heat, disconnecting the water to the property, draining the pipes and pouring antifreeze or other chemicals in the pipes, toilets and sinks at the property .

23.     In this case, upon information and belief, Defendant GTJ was hired by the other Defendants to "trash out" and/or change the locks, and/or "winterize" and/or complete "property preservation" at the subject property.

24.     The named Defendants regularly act in concert to perform "trash out," "winterize" or "property preservation" activities throughout the State of Michigan.

25.     Upon information and belief all of the named Defendants regularly conduction such post foreclosure actions in such a blatantly unlawful manner and act in concert to flagrantly disregard Michigan law.

26.     Upon information and belief Defendants pay all agents of theirs a flat fee regarding the "trash outs" and allow the end entity completing the "trash out" to keep all items of personal property removed from the subject premises, thereby creating an environment conducive to the stealing and/or conversion of items of personal property owned by individuals who have just been through a Mortgage Foreclosure.

4

## COUNT -I- CONVERSION

27.     Plaintiffs reallege and reincorporate the allegations contained in all preceding paragraphs as though fully restated herein

28.     As set forth fully in the preceding paragraphs, Plaintiff was the owner of numerous items located at the Property, at the date that the Defendants and their agents broke into the property.

29.     Upon information and belief, Defendants, either individually, in concert with other Defendants or at the direction of other Defendants wrongfully exerted dominion over the Plaintiff's personal property in any of the following ways:

        a.     intentionally dispossessing another of said chattels

        b.     intentionally destroying or altering a chattel in the actor's possession

        c.     using a chattel in the actor's possession without authority to use it

        d.     receiving a chattel pursuant to a sale, lease, pledge, gift, or other transaction intending to acquire for himself or herself or for another a proprietary interest in it

        e.     disposing of a chattel by a sale, lease, pledge, gift, or other transaction intending to transfer a proprietary interest in it

        f.     misdelivering a chattel; and/or

        g.     refusing to surrender a chattel on demand

30.     As a result of these actions, Plaintiffs have been damaged.

31.     Plaintiff is entitled to treble damages pursuant to MCLA § 600.2919a.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in his favor and against all Defendants in an amount to be determined at trial, trebled as allowable by statute, plus

interest, costs and attorney fees incurred in this matter and that the court grant Plaintiff such other and different relief as the court deems warranted.

## COUNT II – TRESPASS AS TO CHATTELS

32.    Plaintiffs reallege and reincorporate the allegations contained in all preceding paragraphs as though fully restated herein.

33.    As set forth above, the actions of the Defendants, either individually, in concert with other Defendants or at the direction of other Defendants were an intentional intermeddling with a chattel in possession of Plaintiffs which resulted in the following:

a.    Plaintiffs being dispossessed of some of his possessions;

b.    Plaintiffs being deprived of the use of some of his possessions for a long period of time;

c.    Impairment of the condition, quality, usefulness of some of Plaintiffs possessions; or

d.    Harm to the possessions in which Plaintiffs have a legally protected interest.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in his favor and against all Defendants in an amount to be determined at trial, trebled as allowable by statute, plus interest, costs and attorney fees incurred in this matter and that the court grant Plaintiffs such other and different relief as the court deems warranted.

## COUNT III – FORCIBLE EJECTION FROM LANDS

34.    Plaintiff realleges and reincorporates the allegations contained in all preceding paragraphs as though fully restated herein.

6

35.     As set forth above, the actions of the Defendants, either individually, in concert with other Defendants or at the direction of other Defendants was a forcible ejection of the Plaintiff from his Property.

36.     Plaintiff was damaged as a result of this ejection by the loss of a significant amount of personal possessions that were removed from the Property, damage to items left in the property such as Plaintiff's furniture, clothing and mattresses in that the chemical odor which lingered in the fibers rendered them unusable.

37.     Pursuant to MCLA § 600.2918 (1), any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.


WHEREFORE, Plaintiff requests that this Honorable  Court enter judgment in his favor and against all Defendants in an amount to be determined at trial, trebled as allowable by statute, plus interest, costs and attorney fees incurred in this matter and that the court grant Plaintiffs such other and different relief as the court deems warranted.

### COUNT IV – CONCERT OF ACTION

38.     Plaintiff realleges and reincorporates the allegations contained in all preceding paragraphs as though fully restated herein.

39.     Defendants acted in concert pursuant to a common design to illegally interfere and dispossess Plaintiff of his real and personal property.

40.     Defendants, intentionally or recklessly acted to interfere and dispossess Plaintiff of

7

his real and personal property and to interfere with Plaintiff's lawful possessory interest.

41.     Defendants knew or should have known that their actions were illegal and would

cause damage to Plaintiff.

42.     As a direct and proximate result of Defendants concert of action, Plaintiff has

suffered damages.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in his favor

and against all Defendants in an amount to be determined at trial, plus interest, costs and attorney

fees incurred in this matter, as well as exemplary damages for these outrageous acts and that the

court grant Plaintiffs such other and different relief as the court deems warranted.


                              Respectfully Submitted,


                    By:   _____
                          VALERIE A. MORAN (P 56498)
                          THE MORAN LAW FIRM
                          Attorney for Plaintiff
                          115 N. Center Street Suite 203
                          Northville, MI 48167
                          248-465-9400


November 12, 2010


8

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
      Individually
            Plaintiff,

-vs.-
                               Case No. 10 - 4940 · CH
                               Hon.

CITIMORTGAGE INC.,
a foreign profit corporation,
TROTT & TROTT, P.C.,
a Michigan corporation,
Federal Home Loan Mortgage Corporation
(Freddie Mac)
GTJ LLC,
a domestic limited liability company
      Jointly and Severally,
          Defendants.

**FOSTER**
**P28189**

_____/

## DEMAND FOR TRIAL BY JURY

    NOW COMES the Plaintiff by and through his attorney of record, Valerie A. Moran,

and hereby demand a trial by jury in this matter.

                            Respectfully Submitted,

By: _____
            VALERIE A. MORAN (P 56498)
            THE MORAN LAW FIRM
            Attorney for Plaintiff
            115 N. Center Street Suite 203
            Northville, MI  48167
            248-465-9400

November 12, 2010

9

# Exhibit 1

51436
LIBER 9440 PAGE 249
03/21/2000  02:42:59 P.M.
MACOMB COUNTY, MI
CARMELLA SABAUGH, REG/DEEDS

## QUIT CLAIM DEED
STATUTORY FORM



**Philip F. Greco**
**TITLE COMPANY**

*KNOW ALL MEN BY THESE PRESENTS:* That BONNIE JEAN NIEPORTE, a married woman,
RONALD HARRY NIEPORTE, a married man

whose address is 11073 BUSCH AVENUE, WARREN, MICHIGAN 48089

Quit Claim s to RONALD HARRY NIEPORTE, a married man,

whose address is 11073 BUSCH AVENUE, WARREN, MICHIGAN 48089

the following described premises situated in the City of Warren County of Macomb
and State of Michigan, to-wit:

Lot 26, "RAY KIMBERELY SUBDIVISION", part of the N.E. 1/4 of
Section 22, T.1 N., R.12 E., Warren Township (now City of Warren)
Macomb County, Michigan.  Recorded in Liber 38 of Plats, pages
1 & 2 of Macomb County Records.

More commonly known as:  11073 Busch Avenue
                          Warren, Michigan  48089

together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or
in anywise appertaining, for the sum of
$1.00.  Exempt under MCL 207.505 (i)

Dated this     21st     day of   March      2000

Signed in the presence of:                              Signed by:

_Jackie A. Kramp_                        _Bonnie Jean Nieporte_
Jackie A. Kramp                          BONNIE JEAN NIEPORTE
_Wendy A. Lesnek_                        _Ronald Harry Nieporte_
Wendy A. Lesnek                          RONALD HARRY NIEPORTE

STATE OF MICHIGAN  }
COUNTY OF Macomb   } SS.

The foregoing instrument was acknowledged before me this   21st   day of   March   ,

2000     by   BONNIE JEAN NIEPORTE and RONALD HARRY NIEPORTE

                    WENDY A. LESNEK                Notary Public,
                    Macomb                         County, Michigan

My Commission expires

| When Recorded Return To: | Send Subsequent Tax Bills To: | Drafted by: GEORGE E. MICHAELS, |
|---|---|---|
| RONALD H. NIEPORTE | SAME | Business Address<br>21220 KELLY ROAD<br>EASTPOINTE, MI  48021 |

Tax Parcel #_____  Recording Fee_____  Revenue Stamps_____

# MORTGAGE

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
P.O. BOX 5064
TROY, MICHIGAN 48084
ATTN:FINAL/TRAILING DOCUMENTS

This instrument was prepared by:

LOAN #: 637414089

———————————————— [Space Above This Line For Recording Data] ————————————————

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated JULY 23, 2003,        together with all Riders to this document.
(B) "Borrower" is RONALD H NIEPORTE, AN UNMARRIED MAN.

Borrower's address is 11073 BUSCH
                    WARREN, MI 48089.

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is ABN AMRO MORTGAGE GROUP, INC.

Lender is a CORPORATION,                             organized and existing under the laws of
DELAWARE.                                  Lender's address is 2600 W. BIG BEAVER
RD., TROY, MICHIGAN 48084.

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated JULY 23, 2003.        The Note states that Borrower owes Lender ******************ONE HUNDRED THIRTY TWO THOUSAND AND NO/100 **************************************************** Dollars (U.S.  $132,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 1, 2033.
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3023 1/01        Initials: _____
© 1999-2002 Online Documents, Inc.                Page 1 of 9                                  MIUDEED   0211

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

LOAN #: 637414089

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender

shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

LOAN #: 637414089

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

LOAN #: 637414089

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

LOAN #: 637414089

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3023 1/01    Initials: _____

© 1999-2002 Online Documents, Inc.    Page 7 of 9    MIUDEED

LOAN #: 637414089

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

LOAN #: 637414089

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)
RONALD H NIEPORTE

State of MICHIGAN                    County of _____

The foregoing instrument was acknowledged before me this _____ (date)
by  RONALD H NIEPORTE (name of person acknowledged).

_____
Signature of Person Taking Acknowledgment

_____
Title or Rank

_____
Serial Number, if any

# Exhibit 2

51436
LIBER 9440 PAGE 249
03/21/2000  02:42:59 P.M.
MACOMB COUNTY, MI
CARMELLA GABROGH, REG/DEEDS

## QUIT CLAIM DEED
STATUTORY FORM


Philip F. Greco
TITLE COMPANY

*KNOW ALL MEN BY THESE PRESENTS:* That BONNIE JEAN NIEPORTE, a married woman,
RONALD HARRY NIEPORTE, a married man

whose address is 11073 BUSCH AVENUE, WARREN, MICHIGAN 48089

Quit Claim s to RONALD HARRY NIEPORTE, a married man,

whose address is 11073 BUSCH AVENUE, WARREN, MICHIGAN  48089

the following described premises situated in the   City      of  Warren   County of  Macomb
and State of Michigan, to-wit:

Lot 26, "RAY KIMBERELY SUBDIVISION", part of the N.E. 1/4 of
Section 22, T.1 N., R.12 E., Warren Township (now City of Warren)
Macomb County, Michigan.  Recorded in Liber 38 of Plats, pages
1 & 2 of Macomb County Records.

More commonly known as:  11073 Busch Avenue
                         Warren, Michigan  48089

together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or
in anywise appertaining, for the sum of
$1.00.  Exempt under MCL 207.505 (i)

Dated this    21st         day of   March          2000

Signed in the presence of:                                Signed by:

_Jackie A. Kramp_                          _Bonnie Jean Nieporte_
JACKIE A. KRAMP                            BONNIE JEAN NIEPORTE
_Wendy A. Lesnek_                          _Ronald Harry Nieporte_
Wendy A. Lesnek                            RONALD HARRY NIEPORTE


STATE OF MICHIGAN   }
COUNTY OF Macomb    } SS.

The foregoing instrument was acknowledged before me this ____21st____ day of ____March____,
2000 ____by ___BONNIE JEAN NIEPORTE and RONALD HARRY NIEPORTE_____

                         WENDY A. LESNEK            *Notary Public,*
                         Macomb                     *County, Michigan*

My Commission expires

| When Recorded Return To: | Send Subsequent Tax Bills To: | Drafted by: GEORGE E. MICHAELS, |
|---|---|---|
| RONALD H. NIEPORTE | SAME | Business Address 21220 KELLY ROAD EASTPOINTE, MI  48021 |

Tax Parcel # _____   Recording Fee_____   Revenue Stamps_____

| STATE OF MICHIGAN<br>COUNTY OF MACOMB<br>16TH JUDICIAL CIRCUIT | DISCOVERY AND CASE EVALUATION<br>ORDER | Case No: **2010-004940-CH** |
|---|---|---|
| Plaintiff Name:<br><br>**RONALD NIEPORTE** | v | Defendant Name:<br><br>**CITIMORTGAGE INC et al** |

This Discovery and Case Evaluation Order shall govern all parties and their respective counsel.

1. This order shall issue following the filing of the first answer to the complaint. This order shall be binding on all parties in this case, regardless of when they appear in the action. If a plaintiff serves or adds a defendant to the case after receiving this order, that plaintiff must provide that defendant with a copy of this order. The added defendant is bound by the terms of this order, unless the time periods in this order are extended by order of the Court.

2. All discovery, including depositions, interrogatories, medical examinations, etc., shall be initiated by 04/29/2011 unless extended by order of the Court.

3. Summary disposition motion(s) must be filed and heard by 07/28/2011.

4. Case evaluation shall occur after the close of discovery. You will receive a notice scheduling the date and time of case evaluation.

5. Witness lists, including identification of experts and their field of expertise, names and addresses, shall be furnished by plaintiff(s) to defendant(s) on 02/14/2011 and by defendant(s) to plaintiff(s) on 02/28/2011. By the end of the discovery period set by this order, the parties shall also furnish each other copies of all known records, wage loss, photographs and diagrams, and any other real evidence to be relied upon in case evaluation.

6. An extension of the deadlines in this order shall only be granted by order in the discretion of the trial judge.

Dated: December 30, 2010

_____
JOHN C FOSTER
Circuit Court Judge

NASSEEM S RAMIN
2723 SOUTH STATE STREET #400
ANN ARBOR, MI 48104

STATE OF MICHIGAN                    **NSRA**    JAN 1 1 2011

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE

v.                                          Case No.   2010-004940-CH

CITIMORTGAGE INC et al
_____/

ORDER FOR EARLY DISPOSITION SETTLEMENT CONFERENCE

This case is scheduled for an Early Disposition Settlement Conference on March

24, 2011 at 8:00 am before the HONORABLE JOHN C FOSTER.

Trial attorneys, the parties involved and representatives with full settlement

authority are required to be present at the conference.

IT IS SO ORDERED.

HON. JOHN C FOSTER

Date:  January 7, 2011

NASSEEM S RAMIN
2723 SOUTH STATE STREET  #400
ANN ARBOR, MI  48104

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
Individually,

                                                    Case No. 10-4940-CH
                                                    Hon. John C. Foster

       Plaintiff,

v

CITIMORTGAGE, INC.
a foreign for profit corporation,
TROTT & TROTT, P.C.,
a Michigan corporation,
FEDERAL HOME LOAN MORTGAGE CORPORATION,
(Freddie Mac)
GTL LLC,
a domestic limited liability company,
Jointly and severally,

          Defendants.

---

THE MORAN LAW FIRM
Valerie A. Moran (P56498)
Attorney for Plaintiff
115 N. Center Street, Suite 203
Northville, MI 48167
(248) 465-9400

TROTT & TROTT, P.C.
Richard Welke (P44403)
Counsel for Defendant TROTT &
TROTT, P.C.
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
(248) 723-5765

DYKEMA GOSSETT PLLC
K.J. Miller (P62014)
Nasseem S. Ramin (P73513)
Attorneys for Defendant CitiMortgage, Inc.
2723 South State St., suite 400
Ann Arbor, MI 48104
(734) 214-7678

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

---

## DEFENDANT'S ANSWER TO COMPLAINT AND JURY DEMAND

---

NOW COMES Defendant, TROTT & TROTT, P.C. (hereinafter referred to as

"TROTT" or "Defendant"), by and through its attorneys, Trott & Trott, P.C., by Richard

Welke, and for its Answer to Complaint and Jury Demand ("Complaint"), state as follows:

1.      Defendant neither admits nor denies the allegations contained in Paragraph 1 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.

2.      Defendant neither admits nor denies the allegations contained in Paragraph 2 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.

3.      · Defendant, Trott is a Michigan corporation.

4.      Defendant neither admits nor denies the allegations contained in Paragraph 4 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.

5.      Defendant neither admits nor denies the allegations contained in Paragraph 4 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.

6.      No response is required from Defendant since the allegations appear to be Plaintiffs commentary, opinion or interpretation of the law.

7.      No response is required from Defendant since the allegations appear to be Plaintiffs commentary, opinion or interpretation of the law.

## GENERAL ALLEGATIONS

8.      Defendant re-alleges and re-incorporates herein its Answers to the preceding paragraphs 1-7 as if fully restated herein.

9.      Defendant neither admits nor denies the allegations contained in Paragraph 9 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

10.     Defendant neither admits nor denies the allegations contained in Paragraph 10 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.

11.     Defendant neither admits nor denies the allegations contained in Paragraph 11 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations

12.     Defendant neither admits nor denies the allegations contained in Paragraph 12 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.  By way of further response, Defendant denies any wrongdoing or illegal conduct.

13.     Defendant does not contest the allegation contained in Paragraph 13, but reserves the right to do so in the future.

14.     Defendant neither admits nor denies the allegations contained in Paragraph14 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

15.     Defendant neither admits nor denies the allegations contained in Paragraph15 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

16.     Defendant neither admits nor denies the allegations contained in Paragraph 16 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

17.     Defendant neither admits nor denies the allegations contained in Paragraph 17 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.

18.     Defendant neither admits nor denies the allegations contained in Paragraph 18 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations.

19.     Defendant neither admits nor denies the allegations contained in Paragraph 19 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

20.     Defendant neither admits nor denies the allegations contained in Paragraph 20 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

21.     Defendant neither admits nor denies the allegations contained in Paragraph 21 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

22.     Defendant neither admits nor denies the allegations contained in Paragraph 22 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

23.     Defendant neither admits nor denies the allegations contained in Paragraph 23 of the Complaint for the reason that it lacks sufficient information or knowledge to form a

**TROTT & TROTT, P.C.**
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

24.   To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

25.   To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

26.   To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

## COUNT I - CONVERSION

27.   Defendant re-alleges and re-incorporates herein its Answers to the preceding paragraphs 1-26 as if fully restated herein.

28.   Defendant neither admits nor denies the allegations contained in Paragraph 28 of the Complaint for the reason that it lacks sufficient information or knowledge to form a belief as to the truth of the allegations. By way of further response, Defendant denies any wrongdoing or illegal conduct.

29.   To the extent the allegations in Paragraph 29 a-g refer to this Defendant, Trott denies the allegations as stated and further denies any wrongful and/or illegal conduct.

30.   To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

31.   Defendant denies the allegations as stated.

WHEREFORE, Defendant respectfully requests this Court to dismiss Plaintiff's Complaint in its entirety with prejudice and award costs and reasonable attorney fees necessitated by defense of this matter.

## COUNT II – TRESPASS AS TO CHATTELS

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

32.     Defendant re-alleges and re-incorporates herein its Answers to the preceding paragraphs 1-31 as if fully restated herein.

33.     To the extent the allegations in Paragraph 29 a-d refer to this Defendant, Trott denies the allegations as stated and further denies any wrongful and/or illegal conduct.

WHEREFORE, Defendant respectfully requests this Court to dismiss Plaintiff's Complaint in its entirety with prejudice and award costs and reasonable attorney fees necessitated by defense of this matter.

## COUNT III – FORCIBLE EJECTION FROM LANDS

34.     Defendant re-alleges and re-incorporates herein its Answers to the preceding paragraphs 1-33 as if fully restated herein.

35.     To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

36.     To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

37.     No response is required from Defendant since the allegations appear to be Plaintiffs commentary, opinion or interpretation of the law. By way of further response, Defendant denies any wrongdoing or illegal conduct.

WHEREFORE, Defendant respectfully requests this Court to dismiss Plaintiff's Complaint in its entirety with prejudice and award costs and reasonable attorney fees necessitated by defense of this matter.

## COUNT IV – CONCERT OF ACTION

38.     Defendant re-alleges and re-incorporates herein its Answers to the preceding paragraphs 1-38 as if fully restated herein.

39.     To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

40.     To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

41.     To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

42.     To the extent the allegation refers to this Defendant, Trott denies the allegation as stated and further denies any wrongful and/or illegal conduct.

WHEREFORE, Defendant respectfully requests this Court to dismiss Plaintiff's Complaint in its entirety with prejudice and award costs and reasonable attorney fees necessitated by defense of this matter.

TROTT & TROTT, P.C.

Dated:  March 4, 2011

Richard Welke (P44403)
Attorney for Defendant TROTT & TROTT, P.C.
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
(248) 723-5765

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
Individually,

                                         Case No. 10-4940-CH
                                         Hon. John C. Foster

     Plaintiff,

v

CITIMORTGAGE, INC.
a foreign for profit corporation,
TROTT & TROTT, P.C.,
a Michigan corporation,
FEDERAL HOME LOAN MORTGAGE CORPORATION,
(Freddie Mac)
GTL LLC,
a domestic limited liability company,
Jointly and severally,

     Defendants.

| THE MORAN LAW FIRM | TROTT & TROTT, P.C. |
|---|---|
| Valerie A. Moran (P56498) | Richard Welke (P44403) |
| Attorney for Plaintiff | Co-Counsel for Defendant, |
| 115 N. Center Street, Suite 203 | TROTT & TROTT, P.C. |
| Northville, MI 48167 | 31440 Northwestern Hwy., Ste. 200 |
| (248) 465-9400 | Farmington Hills, MI 48334 |
| | (248) 723-5765 |
| DYKEMA GOSSETT PLLC | |
| K.J. Miller (P62014) | |
| Nasseem S. Ramin (P73513) | |
| Attorneys for Defendant CitiMortgage, Inc. | |
| 2723 South State St., suite 400 | |
| Ann Arbor, MI 48104 | |
| (734) 214-7678 | |

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

**DEFENDANT'S AFFIRMATIVE AND/OR SPECIAL DEFENSES TO
COMPLAINT AND JURY DEMAND**

    NOW COMES Defendant, TROTT & TROTT, P.C. (hereinafter referred to as

"TROTT" of "Defendant"), by and through its attorneys, Trott & Trott, P.C., by Richard

Welke, and for its Affirmative and/or Special Defenses to Complaint and Jury Demand ("Complaint"), state as follows:

1.      Defendant(s) will rely upon all affirmative defenses available pursuant to MCR 2.111 and MCR 2.116.

2.      Defendant(s) reserve the right to file a Counter-Claim, Cross-Claim or Third-Party Complaint, if appropriate, and as discovery dictates.

3.      Plaintiff is not entitled to any relief because of her actions, inactions, contributory negligence, and comparative negligence.

4.      The Court lacks jurisdiction over the person or property.

5.      The process issued in the action was insufficient.

6.      The Court lacks jurisdiction of the subject matter.

7.      The party asserting the claim lacks the legal capacity to sue.

8.      The claim is barred because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate (demand is hereby made to arbitrate this matter), infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action.

9.      The opposing party has failed to state a claim on which relief can be granted

10.     Except as to the amount of damages, there is no genuine issue as to any material fact, and the Defendants are entitled to judgment or partial judgment as a matter of law.

11.     Defendant(s) also rely on the affirmative defenses of accord and satisfaction, arbitration and award (see #8 above), assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

limitations, waiver, fraud, immunity granted by law; want or failure of consideration or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery; as appropriate.

12.     Plaintiff's claims are barred by the equitable doctrine of judicial or equitable estoppel.

13.     Plaintiff has unclean hands.

14.     Plaintiff's claims are barred by the doctrine of laches.

15.     Plaintiff's alleged damages, if any, are the result of the actions and/or omissions of parties and/or persons other than this Defendant.

16.     Plaintiff has, at all relevant times, notice, actual and/or constructive, of any contested issue in this matter.

17.     Defendant(s) rely upon any affirmative defense asserted by any party in this matter as may be applicable to either or all Defendants.

18.     Plaintiff has failed to mitigate his/her damages, if any.

19.     Defendant(s) will rely upon any affirmative defense to any alleged violation of any state or federal statute or provision contained therein or in the common law interpreting same as it relates to this matter presently before this court.

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

20.     Defendant(s) forwarded and posted all notices to the Plaintiff in a timely manner that satisfied all applicable laws, statutes, rules and regulations.

21.     Plaintiff's claim is barred by the doctrine of res judicata.

22.     Plaintiff's claim is barred by the doctrine of collateral estoppel.

23.     Plaintiff's claim is barred by a prior judgment.

24.     Plaintiff's pleadings are frivolous and in violation of MCR 2.114.

25.     This Defendant complied with all parts of the eviction provisions, as well as any applicable federal or state statute, rule, regulation or law and Defendant will rely upon any affirmative/special defense to any alleged violation of the eviction provisions.

26.     This Defendant complied with all parts of the trespass provisions, as well as any applicable federal or state statute, rule, regulation or law and Defendant will rely upon any affirmative/special defense to any alleged violation of the trespass provisions.

27.     Defendant responded appropriately to all requests and engaged in no wrongful or unlawful conduct.

28.     Plaintiff's alleged damages were not caused by any actions or omissions of this Defendant, but rather were caused by the actions of other named or unnamed Defendant(s), and thus, this Defendant is entitled to recovery from some or all of them in the event that Plaintiffs prevail.

29.     Plaintiff's claims are barred, in whole or in part, by Federal Law.

30.     Plaintiff's claims are preempted, in whole or in part, by Federal Law.

31.     That Defendant will rely upon any affirmative defense to any alleged violation of any state or federal statute or provision contained therein or in the common law interpreting same as it relates to this matter presently before this court.

32.     This Defendant did not convert Plaintiff's property and Defendant will rely upon any affirmative/special defense to any alleged violation.

33.     This Defendant did not forcibly evict, interfere with possessory interest, remove any personality, convert or commit theft and this Defendant will rely upon any affirmative/special defense to any alleged violation.

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

34.     This Defendant will rely upon the "independent contractor affirmative/special defense to any alleged misconduct or violation of law.

35.     This Defendant did not breach any duty it may have owed the Plaintiff.

36.     This Defendant did not violate MCLA 600.2918 or any other wrongful lockout statute or common law similar claim.

37.     That all of the agreements, transactions and conduct of the Defendant(s) were appropriate and legal.

38.     Defendant did not commit fraud or misrepresent anything to the Plaintiff.

39.     Any affirmative defense, which is not raised in a Defendant's answer or in its motion for summary judgment is waived. MCR 2.111; MCR 2.116; *KEMERKO CLAWSON v RxIV, 269 Mich. App. 347 (2005); Soderberg v Detroit Bank & Trust Co. (1983) 126 Mich App 474, 337 NW2d 364, app den (1984) 419 Mich 867.* Any listed affirmative/special defense, which is subsequently determined to have no factual or legal basis will be withdrawn.

40.     Defendant(s) reserve the right to amend and/or supplement their defenses, as they become known through discovery or otherwise.

**TROTT & TROTT, P.C.**
31440 NORTHWESTERN
HWY., STE. 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 642-3628

TROTT & TROTT, P.C.

Dated:  March 4, 2011

Richard Welke (P44403)
Attorney for Defendant TROTT & TROTT, P.C.
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
(248) 723-5765

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,

        Plaintiff,

vs.

CITIMORTGAGE, INC., TROTT & TROTT,
PC, FEDERAL HOME LOAN MORTGAGE
CORPORATION, and GTJ LLC,

        Defendants.

Case No. 10-4940-CH

Honorable John C. Foster

---

| | |
|---|---|
| Valerie A. Moran (P56498) | K.J. Miller (P62014) |
| **THE MORAN LAW FIRM** | Nasseem S. Ramin (P73513) |
| *Attorneys for Plaintiff* | **DYKEMA GOSSETT PLLC** |
| 115 N. Center Street, Suite 203 | *Attorneys for Defendant CitiMortgage, Inc.* |
| Northville, MI 48167 | 2723 South State Street, Suite 400 |
| (248) 465-9400 | Ann Arbor, MI 48104 |
| | (734) 214-7678 |

---

### DEFENDANT CITIMORTGAGE, INC.'S
### ANSWER TO COMPLAINT AND JURY DEMAND

    Defendant, CitiMortgage, Inc. ("CMI"), through its attorneys, Dykema Gossett PLLC,

hereby submits its Answer to Plaintiff's Complaint and Jury Demand as follows:

    1.    Plaintiff RONDALD [sic] NIEPORTE (NIEPORTE) is a resident of the County
of Macomb, State of Michigan.

    **Answer:** CMI is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph.

    2.    Defendant CITIMORTGAGE, INC ("CITIMORTGAGE"), is upon information
and belief a foreign corporation conducting business in Macomb County, Michigan

    **Answer:** CMI admits only that it is a New York Corporation, with its principal place of

business in the state of Missouri, and that it conducts business in Michigan.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

3.      Defendant TROTT & TROTT, P.C., (TROTT) is upon information and belief a Michigan law firm, as well as, Michigan corporation conducting business in Macomb County, Michigan.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

4.      Defendant GTJ LLC ("GTJ"), is upon information and belief a Michigan limited liability company conducting business in Macomb County, Michigan.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

5.      Defendant, Federal Home Loan Mortgage Corporation (FREDDIEMAC), upon information and belief was a government sponsored enterprise, now in governmental receivership, conducting business in the County of Macomb, State of Michigan.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

6.      Plaintiff seeks an amount of damages over $25,000.00 as well as equitable relief.

**Answer:** CMI denies all allegations of wrongdoing and denies that Plaintiff is entitled to any relief from CMI based on the allegations in the Complaint.

7.      The complained of injuries occurred within the County of Macomb, State of Michigan thus jurisdiction and venue are proper before this Court.

**Answer:** CMI admits only that jurisdiction and venue are proper.  CMI denies all allegations of wrongdoing and denies that Plaintiff is entitled to any relief from CMI based on the allegations in the Complaint.

## GENERAL ALLEGATIONS

8.      Plaintiff realleges and reincorporates each of the allegations contained in all preceding paragraphs as though fully restated herein.

**Answer:** CMI incorporates by reference its responses to paragraphs 1 through 7 set forth above.

2

9.     Plaintiff was the owner of and had a certain piece of real property located at : 11073 Busch Ave. Warren Michigan. **(Exhibit 1: Mortgage Exhibit 2: Deed)**

**Answer:** The referenced documents speak for themselves.  CMI denies the allegations contained in this paragraph to the extent that they are inconsistent with the referenced documents.

10.     While Plaintiff was the owner of the Property, he had granted a Mortgage to ABN AMRO Mortgage Group, Inc. (Exhibit 1) that was subsequently assigned, bought or otherwise transferred to Defendant Citimortgage and then subsequently assigned, bought or otherwise transferred to Defendant, Freddiemac.

**Answer:** The referenced document speaks for itself.  CMI denies the allegations contained in this paragraph to the extent that they are inconsistent with the referenced document.

11.     Upon information and belief the mortgage loan was serviced by Defendant Citimortgage.

**Answer:** CMI admits only that it began servicing the mortgage loan at issue on September 15, 2007.

12.     Plaintiff fell behind on his Mortgage payments, and the above referenced property was sold at Sheriff Sale on July 10, 2009 in a foreclosure by advertisement with the assistance of Defendant Trott & Trott acting as their attorney.

**Answer:** CMI admits only that Plaintiff defaulted on his obligations under the mortgage loan at issue and that the real property at issue was sold at a Sheriff's sale on July 10, 2009.

13.     The redemption period was to expire on January 10, 2010.

**Answer:** CMI admits that the redemption period expired on January 10, 2010.

14.     During the redemption period, Plaintiff occupied the property, which was his primary residence.  On November 17, 2009, while Plaintiff was away at work, locks were removed and changed at the property, the water was shut off and disconnected, all the pipes were drained, and pipes as well as drains were treated with chemicals.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

3

15.    During the course of the illegal acts of Defendants, Plaintiff lost thousands of dollars in tools and other personal property which were unlawfully removed from the property during Defendants [sic] unlawful entry into the property and unlawful interference with Plaintiff's possessory interest.  Additionally, doors and locks at the property were removed or damaged in the course the [sic] of removing and changing the locks and the chemicals placed in pipes and drains in the home emitted a strong odor which penetrated Plaintiff's furniture, mattress, clothing and other personal items such that they could no longer be used for their intended purpose and had to be thrown away.

**Answer:** CMI denies all allegations of wrongdoing and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

16.    The drains at the property were treated with chemicals which gave the entire property a sever chemical odor.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

17.    When Plaintiff later retrieved his belongings, the chemical odor in the property was so strong it caused Plaintiff to suffer severe headaches and he could only be inside the home for short periods of time.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

18.    Upon information and belief, lock out, possessory interference and removal of personal property was carried out by Defendant GTJ.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

19.    Upon information and belief these acts were at the direction of, or with the knowledge of, other Defendants.

**Answer:** CMI denies all allegations of wrongdoing and is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

20. Upon information and belief the lock outs committed by lenders and their servicing companies, and agents often occur in mortgage foreclosure.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

21. In mortgage foreclosures, companies are often hired to act as "trash out" companies, i.e. to go into homes that are not redeemed and remove and discard personal property, to change the locks on the properties.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

22. These companies often also "winterize" or complete "property preservation" of the properties which includes shutting off heat, disconnecting the water to the property, draining the pipes and pouring antifreeze or other chemicals in the pipes, toilets and sinks at the property.

**Answer:** CMI is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

23. In this case, upon information and belief, Defendant GTJ was hired by the other Defendants to "trash out" and/or change the locks, and/or "winterize" and/or complete "property preservation" at the subject property.

**Answer:** CMI denies all allegations of wrongdoing and is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

24. The named Defendants regularly act in concert to perform "trash out," "winterize" or "property preservation" activities throughout the State of Michigan.

**Answer:** CMI denies all allegations of wrongdoing and is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

25. Upon information and belief all of the named Defendants regularly conduction [sic] such post foreclosure actions in such a blatantly unlawful manner and act in concert to flagrantly disregard Michigan law.

**Answer:** Denied as untrue.

26.    Upon information and belief Defendants pay all agents of theirs a flat fee regarding the "trash outs" and allow the end entity completing the "trash out" to keep all items of personal property removed from the subject premises, thereby creating an environment conducive to the stealing and/or conversion of items of personal property owned by individuals who have just been through a Mortgage Foreclosure.

**Answer:** CMI denies all allegations of wrongdoing and is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

## COUNT I – CONVERSION

27.    Plaintiffs [sic] reallege and reincorporate the allegations contained in all preceding paragraphs as though fully restated herein.

**Answer:** CMI incorporates by reference its responses to paragraphs 1 through 26 set forth above.

28.    As set forth fully in the preceding paragraphs, Plaintiff was the owner of numerous items located at the Property, at the date that the Defendants and their agents broke into the property.

**Answer:** Denied as untrue.

29.    Upon information and belief, Defendants, either individually, in concert with other Defendants or at the direction of other Defendants wrongfully exerted dominion over the Plaintiff's personal property in any of the following ways:

a.    intentionally dispossessing another of said chattels

b.    intentionally destroying or altering a chattel in the actor's possession

c.    using a chattel in the actor's possession without authority to use it

d.    receiving a chattel pursuant to a sale, lease, pledge, gift, or other transaction intending to acquire for himself or herself or for another a proprietary interest in it

e.    disposing of a chattel by a sale, lease, pledge, gift, or other transaction intending to transfer a proprietary interest in it

f.    misdelivering a chattel; and/or

g.    refusing to surrender a chattel on demand

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

**Answer:** Denied as untrue.

30.     As a result of these actions, Plaintiffs [sic] have been damaged.

**Answer:** Denied as untrue.

31.     Plaintiff is entitled to treble damages pursuant to MCLA § 600.2919a.

**Answer:** Allegations in this paragraph contain conclusions of law to which no response

is required.  CMI denies that Plaintiff is entitled to the relief requested.

### COUNT II – TRESPASS AS TO CHATTELS

32.     Plaintiffs reallege and reincorporate the allegations contained in all preceding paragraphs as though fully restated herein.

**Answer:** CMI incorporates by reference its responses to paragraphs 1 through 31 set

forth above.

33.     As set forth above, the actions of the Defendants, either individually, in concert with other Defendants or at the direction of other Defendants were an intentional intermeddling with a chattel in possession of Plaintiffs which resulted in the following:

a.      Plaintiffs being dispossessed of some of his possessions;

b.      Plaintiffs being deprived of the use of some of his possessions for a long period of time;

c.      Impairment of the condition, quality, usefulness of some of Plaintiffs possessions; or

d.      Harm to the possessions in which Plaintiffs have a legally protected interest.

**Answer:** Denied as untrue.

### COUNT III – FORCIBLE EJECTION FROM LANDS

34.     Plaintiff realleges and reincorporates the allegations contained in all preceding paragraphs as though fully restated herein.

**Answer:** CMI incorporates by reference its responses to paragraphs 1 through 33 set

forth above.

7

35.     As set forth above, the actions of the Defendants, either individually, in concert with other Defendants or at the direction of other Defendants was a forcible ejection of the Plaintiff from his Property.

**Answer:** Denied as untrue.

36.     Plaintiff was damaged as a result of this ejection by the loss of a significant amount of personal possessions that were removed from the Property, damage to items left in the property such as Plaintiff's furniture, clothing and mattresses in that the chemical odor which lingered in the fibers rendered them unusable.

**Answer:** CMI denies all allegations of wrongdoing and is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

37.     Pursuant to MCLA § 600.2918(1), any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

**Answer:** Allegations in this paragraph contain conclusions of law to which no response is required. To the extent a response is required, the referenced statute speaks for itself. CMI denies that Plaintiff is entitled to the relief requested.

## COUNT IV – CONCERT OF ACTION

38.     Plaintiff realleges and reincorporates the allegations contained in all preceding paragraphs as though fully restated herein.

**Answer:** CMI incorporates by reference its responses to paragraphs 1 through 37 set forth above.

39.     Defendants acted in concert pursuant to common design to illegally interfere and dispossess Plaintiff of his real and personal property.

**Answer:** Denied as untrue.

40.     Defendants, intentionally or recklessly acted to interfere and dispossess Plaintiff of his real and personal property and to interfere with Plaintiff's lawful possessory interest.

**Answer:** Denied as untrue.

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

41.     Defendants knew or should have known that their actions were illegal and would cause damage to Plaintiff.

**Answer:** Denied as untrue.

42.     As a direct and proximate result of Defendants concert of action, Plaintiff has suffered damages.

**Answer:** Denied as untrue.

## AFFIRMATIVE DEFENSES

CMI has not yet had the opportunity to complete its investigation and discovery in this matter and thereby relies on such of the following defenses as may prove applicable after discovery and at trial:

1.    Plaintiff's Complaint fails to state a claim against CMI upon which relief may be granted.

2.    Plaintiff's claims are barred by the statute of frauds.

3.    Plaintiff's claims are barred by the applicable statute of limitations.

4.    Plaintiff lacks standing to assert any interest in the real property at issue.

5.    Plaintiff's claims against CMI are barred in whole or in part by waiver, estoppel, laches, and unclean hands.

6.    Plaintiff's claims against CMI are barred in whole or in part by the existence of relevant contracts.

7.    Plaintiff's claims against CMI are barred in whole or in part by Plaintiff's failure to mitigate his damages.

8.    Plaintiff's claims against CMI are barred in whole or in part by release.

9.    Plaintiff's damages, if any, were caused by his own negligence, acts and/or inactions and/or the negligence, acts and/or inactions of others, and Plaintiff's damages, if any, were not proximately caused by any actions or inactions of CMI.

10.   Any damages alleged by Plaintiff were the result of superseding and/or intervening causes or were caused or contributorily caused by the negligence and/or fault of others over whom CMI had no control, and such negligence and/or fault should be compared, thereby reducing or completely barring Plaintiffs' alleged right to recover against CMI.

11.   Plaintiff fails to allege any cognizable damages resulting from CMI's alleged acts and/or inactions.

12.   Plaintiff's claims may be barred, in whole or in part, by Plaintiff's own material breaches, frauds, material misrepresentations, omissions, failure to satisfy conditions precedent and/or to properly perform under agreements relevant to the claims.

13.   CMI acted in good faith, in a commercially reasonable manner, and consistent with the requirements of the law, any relevant agreements, and the parties' course of performance.

## RESERVATION OF RIGHT

CMI hereby reserves its right to file such amended answers and such additional defenses as may be appropriate upon completion of its investigation and discovery.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By:_____
K.J. Miller (P62014)
Nasseem S. Ramin (P73513)
*Attorneys for Defendant CitiMortgage, Inc.*
2723 South State Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7678 or (313) 568-5326

December 28, 2010

DET01\876862.1
ID\NSRA - 085514/0999

10

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
      Individually
          Plaintiff,

-vs.-

                            Case No.  10-4940-CH
                            Hon. Judge   Foster

CITIMORTGAGE INC.,
a foreign profit corporation,
TROTT & TROTT, P.C.,
a Michigan corporation,
Federal Home Loan Mortgage Corporation
(Freddie Mac)
GTJ LLC,
a domestic limited liability company
        Jointly and Severally,
              Defendants.

---

VALERIE A. MORAN (P 56498)          GREGORY DEMARRS (P 33578)
THE MORAN LAW FIRM               Honigman Miller Schwartz & Cohn
Attorney for Plaintiff                  Attorney for Defendant GTJ only
115 N. Center Street Suite 203         660 Woodward Ave.  Suite 2290
Northville, MI  48167                Detroit, MI  48226
248-465-9400                       313-465-7356

RICHARD WELKE
TROTT & TROTT, PC.
Attorney for Defendant Trott & Trott, only
31440 Northwestern Hwy
Suite 200
Farmington Hills, MI  48334
248-723-5765

---

**Plaintiff's Witness List**

NOW COMES the Plaintiff, RONALD NIEPORTE, by and through his Attorney

VALERIE A. MORAN and submits this Witness List as follows:

1. Ronald Nieporte: (Plaintiff) 34840 Campus Sterling Heights, MI  48312

   c/o Valerie Moran 115 N. Center Street Suite 203 Northville, MI  48167

2. All neighbors and individuals living in close proximity of the property located at:

   11073 Busch Ave Warren, MI  48089

3. All Realtors present or former employees, agents, officers, representatives, keeper

   of the records, third party service providers, contractors, subcontractors,

   independent contractors or suppliers.  Who performed services pertaining to:

   11073 Busch Ave Warren, MI  48089

4. Todd Beekman, Home Inspector, TRICOR Home Inspection Company, LLC

   5785 Putnam Dr. West Bloomfield, MI 48323 Ph:  248-921-7721. Expert Witness

   Expected to testify regarding issues pertaining to property preservation.

5. All TRICOR Home Inspection Company present or former employees, agents,

   officers, representatives, keeper of the records, third party service providers,

   contractors.. 5785 Putnam Dr. West Bloomfield, MI 48323 Ph: 248-921-7721.

6. All individuals, companies, or third party service providers who performed

   services at or for the subject real property or performed said services for or on

   behalf of any party to this action for the subject real property commonly referred

   to as: 11073 Busch Ave Warren, MI  48089

7. All persons who performed work at or were consulted by Defendants or

   Defendants representatives.

8. All present and former employees, representatives, officers, keepers of records,

   third party providers, agents or independent contractors or subcontractors,

   employees specifically including those who signed or notarized any document

pertaining to the property, mortgage or foreclosure at issue in this litigation, representatives of the Loss Mitigation Department of Trott & Trott, PC: 31440 Northwestern Hwy. Suite 200 Farmington Hills, MI 48334 248-723-5765.

9. All present and former employees, representatives, officers, keepers of records, third party providers, agents or independent contractors or subcontractors of any Appraiser who completed an appraisal for the real property which is the subject of this litigation: 11073 Busch Ave Warren, MI 48089

10. All present and former GTJ LLC employees, representatives, officers, keepers of records, third party providers, agents or independent contractors or subcontractors, or individuals who performed inspection or property preservation or lock changes at the subject property. GTJ address: 851 Ann Street Birmingham, MI 48009.

11. All present and former employees, representatives, officers, keepers of records, third party providers, agents or independent contractors or subcontractors or any prior assign for the mortgage loan of Citimortgage, Inc,

12. All present and former employees, representatives, officers, keepers of records, third party providers, agents or independent contractors or subcontractors of Fannie Mae (Federal Home Loan Mortgage Corporation)

13. All individuals whose name appear on any documents produced in discovery.

14. All City of Warren employees, police officers, agents and independent contractors.

15. Any and all representatives, agents, past or present employees, officer's and/or keeper of the records for any and all financial institutions, appraisers, inspectors

or title agency who inspected the home or provided any services connected with
the property located at : 11073 Busch Ave Warren, MI  48089

16. Any and all present or former employees, agents, representatives, keeper of the
records, independent service providers and/or inspectors for the State of
Michigan.

17. Any and all witnesses appearing on the witness list of the Defendant or named by
any and all parties  hereto whether called or not.

18. Any and all present or former employees, agents, representatives, keeper of the
records, independent service providers for ABN AMRO Mortgage Group, Inc.
2600 W. Big Beaver Rd. Troy, MI  48084

19. Any and all parties to this action, their agents, officers, employees, agents or
representatives.

20. If necessary, any and all expert witnesses needed to prove any of the claims set
forth in this matter.

21. Any and all persons identified in any: pleading, interrogatory answer, police
report, administrative report, discovery materials,  deposition, court documents,
and any other document, record or other evidence produced in this case.

22. Plaintiffs reserve the right to call any and all of the above witnesses as an Adverse
and/or Hostile witness.

23. Any and all other witnesses as may become known during the course of
discovery.

24. Any and all necessary rebuttal and/or impeachment witnesses.

Plaintiff submits this Witness List with the reservation of rights to further amend

or supplement this Witness List and consistent with the Michigan Rules of Civil

Procedure, Plaintiff continues to diligently investigate this matter and reserves the right to

supplement this Witness List if necessary.

Respectfully submitted:

By: _____
VALERIE MORAN (P 56498)
THE MORAN LAW FIRM
Attorney for Plaintiff
115 N. Center St.  Suite 203
Northville, MI 48167
Ph: 248-465-9400
Fx: 248-465-9465

Dated: February 14, 2011

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
      Individually
            Plaintiff,

-vs.-

CITIMORTGAGE INC.,
a foreign profit corporation,
TROTT & TROTT,  P.C.,
a Michigan corporation,
Federal Home Loan Mortgage Corporation
(Freddie Mac)
GTJ LLC,
a domestic limited liability company
      Jointly and Severally,
         Defendants.

Case No.   10-4940-CH
Hon. Judge    Foster

| | |
|---|---|
| VALERIE A. MORAN (P 56498)<br>THE MORAN LAW FIRM<br>Attorney for Plaintiff<br>115 N. Center Street Suite 203<br>Northville, MI  48167<br>248-465-9400 | GREGORY DEMARRS (P 33578)<br>Honigman Miller Schwartz & Cohn<br>Attorney for Defendant GTJ only<br>660 Woodward Ave.  Suite 2290<br>Detroit, MI  48226<br>313-465-7356 |

RICHARD WELKE
TROTT & TROTT, PC.
Attorney for Defendant Trott & Trott, only
31440 Northwestern Hwy   Suite 200
Farmington Hills, MI  48334
248-723-5765

### Plaintiff's Exhibit List

NOW COMES the Plaintiff, RONALD NIEPORTE, by and through his Attorney

VALERIE A. MORAN and submits this Exhibit List as follows:

1.     Any and all mortgage loan documents

2.     Any and all closing documents

3.     Any and all documents pertaining to the subject property in the possession or

drafted by any Defendant or Defendant representative or employee including all

emails, invoices, faxes, letters, correspondence documents and the like, including

all electronic and meta data.

4.   All inspection reports, invoices, billing statements and documents pertaining to

any repairs and/or property preservation or inspection of the property.

5.   Any and all contracts and disclosures signed by the parties

6.   All affidavits pertaining to the foreclosure of the property.

7.   All reports, notices, notes, invoices, permits, receipts, assessments memorandums
and the like, prepared by or in the possession of City of Warren employees, which
pertain to the subject property.

8.   All MLS listings for the real property.

9.   All exhibits in the Complaint filed by the Plaintiff

10.  All affidavits signed by any of the parties or their employees, representatives or
agents.

11.  All reports, inspections, documents and the like pertaining to the subject property

12.  All documents relied upon, or sited by the Defendants in Defendants Exhibit List

or in any discovery document.

13.  All correspondence between the parties and/or their agents

14.  All documents obtained during discovery

15.  Any and all necessary rebuttal documents.

16.  All documents records, exhibits, notes, invoices, charts, permits relied upon or

produced by Defendants or Defendants expert or lay witnesses.

17.  All documents identified in any discovery request, subpoena, deposition,

interrogatory, admission or pleading.

18.  All documents and affidavits of any process server who completed service

pertaining to any alleged summary proceedings action or any other matter

pertaining to this litigation.

19.     Plaintiff reserves the right to further amend and supplement this exhibit list as

discovery is ongoing in this matter.

Respectfully submitted:

By: _____

VALERIE MORAN (P 56498)
THE MORAN LAW FIRM
Attorney for Plaintiff
115 N. Center St.  Suite 203
Northville, MI 48167
Ph: 248-465-9400
Fx: 248-465-9465

Dated: February 14, 2011

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
     Individually
         Plaintiff,

-vs.-

                             Case No.   10-4940-CH
                             Hon. Judge   Foster

CITIMORTGAGE INC.,
a foreign profit corporation,
TROTT & TROTT,  P.C.,
a Michigan corporation,
Federal Home Loan Mortgage Corporation
(Freddie Mac)
GTJ LLC,
a domestic limited liability company
         Jointly and Severally,
            Defendants.

---

VALERIE A. MORAN (P 56498)
THE MORAN LAW FIRM
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI 48167
248-465-9400

GREGORY DEMARRS (P 33578)
Honigman Miller Schwartz & Cohn
Attorney for Defendant GTJ only
660 Woodward Ave.  Suite 2290
Detroit, MI  48226
313-465-7356

RICHARD WELKE
TROTT & TROTT, PC.
Attorney for Defendant Trott & Trott, only
31440 Northwestern Hwy   Suite 200
Farmington Hills, MI  48334
248-723-5765

---

## PROOF OF SERVICE

     I, Valerie Moran, Attorney for the Plaintiff affirmatively state that I served a copy of Plaintiff's Witness List, Exhibit List and this proof of service on all attorney's of record via First Class Mail on February 14, 2011.

                     By: _____
                         VALERIE MORAN (P 56498)

Dated: February 14, 2011

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
      Individually
              Plaintiff,

-vs.-

                                                   Case No.   10-4940-CH
                                                   Hon. Judge    Foster

CITIMORTGAGE INC.,
a foreign profit corporation,
TROTT & TROTT,  P.C.,
a Michigan corporation,
Federal Home Loan Mortgage Corporation
(Freddie Mac)
GTJ LLC,
a domestic limited liability company
            Jointly and Severally,
                  Defendants.

---

| | |
|---|---|
| VALERIE A. MORAN (P 56498) | GREGORY DEMARRS (P 33578) |
| THE MORAN LAW FIRM | Honigman Miller Schwartz & Cohn |
| Attorney for Plaintiff | Attorney for Defendant GTJ only |
| 115 N. Center Street Suite 203 | 660 Woodward Ave.  Suite 2290 |
| Northville, MI  48167 | Detroit, MI  48226 |
| 248-465-9400 | 313-465-7356 |

RICHARD WELKE
TROTT & TROTT, PC.
Attorney for Defendant Trott & Trott, only
31440 Northwestern Hwy
Suite 200
Farmington Hills, MI  48334
248-723-5765

---

## PLAINTIFF'S MOTION FOR EXTENSION OF SUMMONS AS TO DEFENDANT FREDDIE MAC

NOW COMES the Plaintiff by and through his attorney and brings this Motion for Extension of Summons pursuant to MCR 2.105(I) and MCR 2.102(D) respectively and state as follows:

1. On, November 16, 2010 a complaint was filed on Plaintiff's behalf against defendant Federal Home Mortgage Corporation (Feddie Mac) Plaintiff has completed service on all Defendants, but has been unable to complete service of process on Defendant Freddie Mac due to contradictory addresses that have been provided.

2. Defendant Trott & Trott has advised that they have been retained by Freddie Mac, but refuse to provide or confirm an address or to accept service.

3. Plaintiff has obtained a phone number and verified an address with the legal department of Freddie Mac, and is awaiting to see if service is accepted as represented.

WHEREFORE, Plaintiffs requests this Honorable Court to order an extension of the summons pursuant to MCR 2.102(D) or in the alternative Order Trott & Trott to accept service as per emails from Richard Welke, they have been retained to represent Freddie Mac in this matter.

Respectfully submitted:

By: _____
Valerie A. Moran (P 56498)
Attorney for Plaintiffs
115 N. Center Street Suite 203
Northville, MI  48167
248-465-9400

February 14, 2011

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
      Individually
           Plaintiff,

-vs.-

                                      Case No.   10-4940-CH
                                      Hon. Judge     Foster

CITIMORTGAGE INC.,
a foreign profit corporation,
TROTT & TROTT,  P.C.,
a Michigan corporation,
Federal Home Loan Mortgage Corporation
(Freddie Mac)
GTJ LLC,
a domestic limited liability company
           Jointly and Severally,
               Defendants.

                                                        /

| | |
|---|---|
| VALERIE A. MORAN (P 56498) | GREGORY DEMARRS (P 33578) |
| THE MORAN LAW FIRM | Honigman Miller Schwartz & Cohn |
| Attorney for Plaintiff | Attorney for Defendant GTJ only |
| 115 N. Center Street Suite 203 | 660 Woodward Ave.  Suite 2290 |
| Northville, MI  48167 | Detroit, MI  48226 |
| 248-465-9400 | 313-465-7356 |

RICHARD WELKE
TROTT & TROTT, PC.
Attorney for Defendant Trott & Trott, only
31440 Northwestern Hwy
Suite 200
Farmington Hills, MI  48334
248-723-5765

                                                        /

**PLAINTIFF'S BRIEF IN SUPPORT MOTION FOR
<u>SUBSTITUTED SERVICE AND EXTENSION OF SUMMONS</u>**

Michigan law is clear on the remedy available to party who is unable to serve a defendant, especially a defendant who is believed to be avoiding service.   MCR 2.105(I) provides,

> " (1) On a showing that service of process cannot be reasonably made a provided in this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard."

In the instant case, Defendants are, upon information and belief, deliberating frustrating the completion of service.   Trott, & Trott despite representing that they have been retained in this matter, has refused to accept service and have refused to provide or confirm any address.   Such tactics only frustrate the advancement of this case.

If said address now obtained, is incorrect, Plaintiff's only recourse to effectuate proper service is by order of this Honorable Court mandating Trott & Trott accept service or by publication.

Plaintiff has been unable to confirm a proper address for Freddie Mac and therefore has been delayed in the ability to make proper service and requests an extension of the summons in case the latest address is no longer valid.   The extension of the life of a summons is permitted by MCR 2.102(D), which provides,

> "**Expiration**.  A summons expires 91 days after the date the complaint is filed.  However, within that 91 days, on a showing of good cause, the judge to whom the action is assigned may order a second summons to issue for a definite period not exceeding 1 year from the date the complaint is filed.  If such an extension is granted, the new summons expires at the end of the extended period. The judge may impose just conditions on the issuance of the second summons.   Duplicate summons issued under subrule (A) do not extend the life of the summons.  The running of the 91 day period is tolled while a motion challenging the sufficiency of the summons or the service of the summons is pending." MCR 2.102(D).

Michigan Courts have readily agreed that a party is entitled to a second summons and extension to effectuate alternative service. *Hyslop v. Wojjusik*, 252 Mich App 500, 506-507; 652 NW2d 517 (2002).

In the instant matter, Plaintiff requests the extension of the summons to allow adequate time to verify that this address of 8200 Jones Branch Mailstop 202 in McLean Va is accurate and up to date.

## **CONCLUSION**

Plaintiff has brought a complaint against the identified Defendants for illegal entry into his property. Plaintiff believes that Defendants are deliberately frustrating service of process in this matter.

WHEREFORE, Plaintiffs request this Honorable Court to grant relief by allowing an extension of the summons pursuant to MCR 2.102(D) to ensure that the latest address is correct or, in the alternative order that Trott & Trott accept service in this matter.

Respectfully submitted,

By: _____
Valerie A. Moran (P 56498)
Attorney for Plaintiffs
115 N. Center Street Suite 203
Northville, MI 48167
248-465-9400

Dated: February 4, 2011

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RONALD NIEPORTE,
      Individually
           Plaintiff,

-vs.-

                              Case No.  10-4940-CH
                              Hon. Judge    Foster

CITIMORTGAGE INC.,
a foreign profit corporation,
TROTT & TROTT,  P.C.,
a Michigan corporation,
Federal Home Loan Mortgage Corporation
(Freddie Mac)
GTJ LLC,
a domestic limited liability company
        Jointly and Severally,
           Defendants.

                                                                    /

| | |
|---|---|
| VALERIE A. MORAN (P 56498) | GREGORY DEMARRS (P 33578) |
| THE MORAN LAW FIRM | Honigman Miller Schwartz & Cohn |
| Attorney for Plaintiff | Attorney for Defendant GTJ only |
| 115 N. Center Street Suite 203 | 660 Woodward Ave.  Suite 2290 |
| Northville, MI  48167 | Detroit, MI  48226 |
| 248-465-9400 | 313-465-7356 |

RICHARD WELKE
TROTT & TROTT, PC.
Attorney for Defendant Trott & Trott, only
31440 Northwestern Hwy
Suite 200
Farmington Hills, MI  48334
248-723-5765

                                                                     /

## **AFFIDAVIT**

State of Michigan     )
                          )
County of Wayne     )

I, Valerie Moran, Affiant, being duly sworn, do hereby state the following:

1. I make this Affidavit voluntarily and have personal knowledge of the events contained herein.

2. I am a the Attorney for the Plaintiff in the above captioned matter.

3. I have attempted to obtain the necessary address to complete Service of Process on Defendant Freddie Mac on several occasions via email and phone discussions with Trott & Trott and by my own internet search.

4. Upon information and belief, the Defendants address is currently 8200 Jones Branch Dr. Mailstop 202 McLean, VA  22102

5. I request this extension as I am unable to independently verify that this is an address by which Freddie Mac will accept service.

If sworn, Affiant will testify to the same.  Sworn under penalty of perjury,

_____
Valerie Moran, Affiant

Notary:

JEANNETTE BUCCIARELLI
Notary Public - Michigan
Wayne County
My Commission Expires Oct 17, 2013
Acting in the County of _Wayne_

02/14/11