UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD NIEPORTE,
Individually,

    Plaintiff,                                       Case No. 11-10940

v.                                                Hon. Gerald E. Rosen

CITIMORGAGE, Inc., a foreign for-profit
Corporation, TROTT & TROTT, P.C., a
Michigan Corporation, FEDERAL HOME
LOAN MORTGAGE CORPORATION,
(Freddie Mac), GTJ, LLC, a domestic
Limited liability company,
Jointly and severally,

    Defendants.
_____/

**<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
CITIMORTGAGE'S MOTION FOR A JUDGMENT ON THE PLEADINGS</u>**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         July 25, 2011        

PRESENT:    Honorable Gerald E. Rosen
                          Chief Judge, United States District Court

## I. **<u>INTRODUCTION</u>**

Plaintiff Ronald Nieporte commenced this action in the Macomb County Circuit Court on March 4, 2011, asserting claims of conversion and trespass to chattels (Counts I and II), forcible ejection from lands in violation of M.C.L. § 600.2918 (Count III), and "concert of action" (Count IV). All of Plaintiff's claims arise from actions that took place between the time his Warren, Michigan home was foreclosed and sold at a Sheriff's sale, and the subsequent expiration of the six-month redemption period that attached to the property at the time of sale.

On March 9, 2011, pursuant to 28 U.S.C. § 1442 and 12 U.S.C. § 1452(f), Defendant Federal Home Loans Mortgage Corporation ("Freddie Mac") removed the action to this Court.

The three substantive counts of Plaintiff's Complaint -- Counts I, II, and III -- all arise from the alleged conduct of Defendant GTJ, LLC ("GTJ"), a property preservation maintenance company. Plaintiff alleges that Citimortgage, Inc., ("CMI") the successor-in-interest to Plaintiff's mortgage lender ABN AMRO, and servicer of Plaintiff's mortgage, acted in concert with GTJ and/or that GTJ was an agent acting on behalf of CMI, and, therefore, CMI is liable for all damages arising from GTJ's conduct.

On April 28, 2011, Defendant CMI filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiff has responded to CMI's motion and CMI has replied.

Having reviewed and considered the parties' briefs and supporting exhibits, and the entire record of this matter, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this matter. Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will decide Defendant's motion "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND

Plaintiff Ronald Nieporte was the owner of a home located at 11073 Busch Avenue, Warren, Michigan. Complaint, ¶ 9. On July 23, 2003, Plaintiff entered into a mortgage loan transaction with ABN AMRO Mortgage Group, Inc. ("ABN AMRO"). As security for the loan, Plaintiff executed a mortgage in favor of ABN AMRO. Defendant CMI subsequently became the successor-in-interest to ABN AMRO, and began servicing Plaintiff's mortgage on September 15, 2007. Plaintiff  subsequently defaulted on his obligations under the mortgage and, as a

consequence, the Busch Avenue property was foreclosed by advertisement and sold to the Federal Home Loans Mortgage Corporation ("Freddie Mac") at a Sheriff's sale held on July 10, 2009. Id. at ¶ 12. The six-month period afforded Plaintiff under Michigan law to redeem the mortgaged property expired on January 10, 2010. Id. at ¶ 13.

Plaintiff alleges that on November 17, 2009 – during the period of redemption when he was still in legal possession of the property -- while he was at work, Defendant GTJ unlawfully entered the property, changed locks, drained the pipes and shut off the water.[1] Id. at ¶¶ 14, 15, 18. Plaintiff further alleges that personal property, including "thousands of dollars in tools and other personal property belonging to him," was damaged and/or removed from the Busch Avenue home, and that chemicals used to treat the drains left an odor. Id. At ¶¶ 15-16. Plaintiff claims that GJT was hired by CMI and the other Defendants who acted "in concert" with GJT to perform these activities.

Additionally, Plaintiff alleges that the chemicals used by GTJ to treat the pipes in the house "emitted a strong odor which penetrated Plaintiff's furniture, mattress, clothing and other personal items such that they could no longer be used for their intended purpose and had to be thrown away." Id. at ¶ 15. Plaintiff further alleges that this same chemical odor was so strong it caused him to suffer severe headaches and prevented him from staying at the property for more than only "short periods of time,: Id. at ¶ 17.

---

[1] Defendant GTJ, LLC is a Michigan Limited Liability Company that allegedly enters properties to secure them through "winterization" and "trash out" procedures at the behest of insurance companies and property owners. Plaintiff claims that GTJ was hired by Defendant CMI to "trash out", "winterize" and / or complete "property preservation" at the Busch Avenue property. (Id. at ¶ 23.) "Trash out" is described as going into homes that are not redeemed and removing and discarding personal property as well as changing the locks on the property. (Id. at ¶ 21). "Winterizing" or "property preservation" includes shutting off heat, disconnecting the water to the property, draining the pipes and pouring antifreeze or other chemicals in the pipes, toilets and sinks at the property. (Id. at ¶ 23.)

Plaintiff contends that GTJ is directly liable to him for unlawful entry on his property and the unlawful interference with his chattels, and all of the other defendants -- CMI, CMI's attorneys, Trott & Trott, and Freddie Mac, the purchaser of Plaintiff's property -- are collectively liable to him for damages resulting from GTJ's actions under a theory of vicarious liability. Id.

As indicated, Plaintiff, does not, however, allege that CMI or Trott & Trott or Freddie Mac themselves carried out the lockout, possessory interference, or removal of personal property; he admits that these acts were carried out by GTJ. Id. at ¶ 18. Plaintiff does not even allege that CMI or any of the other named Defendants were present at the property during any of these events. Plaintiff's claims against CMI are based entirely on agency principles, or in the alternative, pursuant to a "concert of action" between GTJ and CMI as alleged in Count IV of his Complaint. Plaintiff posits that CMI directed GTJ to act in the above-described manner, or at least knew about GTJ's actions and incentivized GTJ to act in the above-described manner through the agreed upon payment scheme. According to Plaintiff, CMI pays GTJ a flat fee per property and then allows GTJ to keep all of the personal property it removes from the property thereby "creating an environment conducive to the stealing and / or conversion of items of personal property owned by individuals who have just been through a Mortgage Foreclosure." Id. at ¶ 26. Additionally or alternatively, Plaintiff alleges that CMI and GTJ acted in concert to perform these activities. Id. at ¶ 24.

Defendant CMI now seeks entry of a judgment on the pleadings on all of Plaintiff's claims against it. CMI argues that Counts I and II of the Complaint, which set forth Plaintiff's claims of conversion and trespass to chattels, respectively, are specifically only alleged to have been carried out by GTJ. Id. at ¶ 18. CMI further argues that even if it had directed GTJ to act, the mortgage executed by Plaintiff, specifically Uniform Covenant 9 of the mortgage, expressly

allowed it to enter the property, change the locks, and generally secure the property. Uniform Covenant 9 reads, in pertinent part, as follows:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower [Plaintiff] fails to perform the covenants and agreements contained in this Security Instrument … then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. … Securing the Property includes, but is not limited to, entering the Property *to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off*….

[Defendant's Brief, Ex. A p. 5; Plaintiff's Complaint, Ex. 2 p. 5 (emphasis added)].

CMI contends that by executing the mortgage which contained this provision, Plaintiff consented to the trespass and conversion/interference with chattels of which he now complains.

CMI further contends that the facts as alleged by Plaintiff do not make out a cognizable claim for forcible ejection from lands in violation of the Michigan anti-lockout statute, M.C.L. § 600.2918. Finally, CMI argues that Count IV, concert of action, only applies to it if it engaged in tortious conduct with other named Defendants, which CMI contends has not been shown.

### III. ANALYSIS

#### A. Applicable Standards

Motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) are analyzed under the standards which govern Rule 12(b)(6) motions to dismiss for failure to state a claim. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir.2008). The Court accepts the complaint's allegations as true, and construes those allegations in the plaintiff's favor. However, to survive a motion to dismiss, or for judgment on the pleadings, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

5

face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**B.     Defendant CMI is Not Entitled to Judgment on the Pleadings on Plaintiff's Claims of Conversion and Trespass to Chattels.**

In Count I of his Complaint, Plaintiff alleges a claim of conversion and in Count II, Plaintiff alleges a claim of trespass to chattels. These claims are predicated upon Defendant GTJ's entering his property and changing the locks, ostensibly to secure and winterize the property for one or more of the other Defendants, and GTJ's unlawful removal and/or damage of thousands of dollars worth of tools and other personal property belonging to Plaintiff.

The two torts of conversion and trespass to chattels are similar. Under Michigan law, to establish a claim for trespass to chattels, also known as trespass to personalty, a plaintiff must show a wrongful exercise of dominion or control over the plaintiff's personal property. *See Burns v. Kirkpatrick*, 91 Mich. 364, 51 N.W. 893 (1892). The tort of conversion is similarly defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Head v. Phillips Camper Sales*, 234 Mich. App. 94, 111, 593 N.W.2d 595 (1999), quoting *Foremost Ins Co v. Allstate Ins Co.*, 439 Mich. 378, 391, 486 N.W.2d 600 (1992).

In order for CMI to be liable for conversion or trespass to chattels, Plaintiff must allege that CMI either (I) committed the tort itself or (II) was vicariously liable for damages caused by the actions of the actual tortfeasor. Here, Plaintiff does not allege that CMI actually committed the torts; he alleges alleges that GTJ did. [Plaintiff's Complaint at ¶ 18.] Therefore, to survive a

6

judgment on the pleadings, Plaintiff's Complaint must sufficient allege vicarious liability on the part of CMI. Vicarious liability only arises if an agency relationship exists. Alar v. Mercy Memorial Hosp., 208 Mich.App. 518, 528 (1995). Plaintiff's Complaint must contain sufficient factual allegations showing that GTJ was an actual or ostensible agent of CMI; that GTJ was acting within its scope of its agency when it allegedly committed the torts; and that GTJ's actions were unlawful. Id.

The authority of an agent to bind a principal may be either actual or apparent. Meretta v. Peach, 195 Mich.App. 695, 698 (1992). Actual authority may be either express or implied. Implied authority is the authority that an agent believes the agent possesses. Id. To be an actual agent, there must be "a manifestation by the principal that the agent may act on [its] account." Id. at 697. Further, the principal must be able to control the actions of the agent. Id. Apparent authority arises where the acts and appearances lead an outside party to reasonably believe that an agency relationship exists. However, apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent. Id. at 698-99.

Here, Plaintiff alleges that GTJ was an actual agent of CMI. Plaintiff alleges that GTJ went to his home at the behest of CMI specifically to change the locks, winterize the pipes, and to complete "property preservation" and "trash out" activities. [Plaintiff's Complaint ¶¶ 23, 26.] It was in the performance of the assigned tasks that GTJ entered the premises and allegedly changed the locks and removed his personal property, giving rise to Plaintiff's damages. Simply stated, as alleged by Plaintiff, GTJ was acting on CMI's account. Plaintiff, therefore, has sufficiently alleged that an agency relationship between GTJ and CMI. See Maretta, 195 Mich.App. at 698. CMI, then, could be held vicariously liable for any damages caused by GTJ's activities performed within the scope of the agency. See Alar, 208 Mich.App. at 528 (stating that

the principal is only liable for the actions of its agent that are performed within the scope of the agency relationship).  However, acknowledging the logical inverse of the rule in Alar, any damages arising from GTJ's conduct that falls outside the scope of the agency cannot be imputed to CMI, as GTJ would no longer be acting on CMI's behalf.  See Maretta, 195 Mich.App. at 698.

Accepting Plaintiff's allegations as true, as the Court must, Plaintiff has presented a facially plausible claim of CMI's vicarious liability for damages resulting from GTJ's conduct in performing the winterization, property preservation, and "trashing out" activities at Plaintiff's home.

CMI's argues that it is nonetheless entitled to judgment on the pleadings on Plaintiff's claims of conversion and trespass based upon Uniform Covenant 9 in Plaintiff's mortgage contract.  As indicated, Uniform Covenant 9 authorizes the mortgage lender to "enter[] the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off… ."  [Defendant's Brief, Ex. A, p. 5; Plaintiff's Complaint, Ex. 2, p. 5.] It is CMI's position that, because the mortgage contract authorized these activities, no "unlawful" conduct occurred to give rise to damages for conversion or trespass to chattels for which CMI may be held directly or vicariously liable.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties.  To this rule all others are subordinate."  Shay v. Aldrich, 487 Mich. 648, 660 (2010). "In light of this cardinal rule, and to effectuate the principle of freedom of contract, [the Supreme Court of Michigan] has generally observed that if the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning...."  City of Grosse

8

Pointe Park v. Michigan Municipal Liability and Property Pool, 473 Mich. 188, 197 (2005) (internal citations and quotation marks omitted).

      Although Uniform Covenant 9 of the mortgage clearly allowed Defendant CMI to enter the premises, change locks, and generally secure its investment from damage, the clear language of the mortgage contract cannot be understood as allowing CMI to authorize one of its agents to simply confiscate and/or discard at will all of the personal property found in the house. Admittedly, CMI's rights under Uniform Covenant 9 are "not limited to" the enumerated rights listed in Uniform Covenant 9. However, this passing phrase cannot stand for total control over the contents of the premises. When GTJ entered the property, and changed the locks, the six-month redemption period had not yet expired and Plaintiff, therefore, still had a possessory right to the property. See M.C.L. §§ 600.3236, 3240(8). Having the right of possession, Plaintiff was entitled to keep his personal belongings there until such right of possession is terminated. It would be contrary to reason to allow Plaintiff to remain in possessory right of the real property while simultaneously allowing CMI to enter the property, change the locks and discard all of Plaintiff's personal property within it at will.

      While it is true that under the mortgage, CMI could arguably remove any of Plaintiff's personal property that was in some way damaging the real property or posed serious risk to the property, CMI has not shown, nor even alleged, that the thousands of dollars worth of Plaintiff's tools GTJ is claimed to have removed was in any way endangering the property. Therefore, removal of the tools or any other personal property belonging to Plaintiff cannot be said to have been contemplated and agreed upon in the mortgage contract. See Shay, 487 Mich. at 660.

      Because the mortgage cannot be understood to allow CMI an unfettered right to personal property belonging the Plaintiff simply because it is found within the home, before CMI gained

full possessory rights to the property, CMI could be found liable for conversion, vicariously, through the alleged actions and conduct of GTJ.  Therefore, taking Plaintiff's allegations as true, the Court finds that Plaintiff's Complaint sufficiently sets forth claims of vicarious liability for trespass and conversion against Defendant CMI.  Accordingly, Defendant's motion for judgment on the pleadings as to Count I and II is **DENIED**.

C.     **Plaintiff's Complaint Fails to Allege a Cognizable Claim of Forcible Ejection in Violation of the Michigan Anti-Lockout Statute**

Count III of Plaintiff's complaint, forcible ejection, is predicated upon M.C.L. § 600.2918, Michigan's anti-lockout statute.  The anti-lockout statute states, in pertinent part:

> (1) Any person who is ejected or put out of any lands or tenements in *a forcible and unlawful manner*, or being out is afterwards held and kept out, *by force*, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

M.C.L. § 600.2918(1) (emphasis added).

This Court has not found any Michigan case law that applies the anti-lockout statute to mortgagor-mortgagee relationship and apparently Defendant has not, either.  A federal court sitting in diversity must apply the substantive law of the forum state.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct 817 (1938).  Further, a federal court "must follow the decisions of the state's highest court when that court has addressed the relevant issue."  Talley v. State Farm Fire and Casualty Co., 223 F.3d 323, 326 (6th Cir. 2000).  "To the extent that the state supreme court has not yet addressed the issue presented, it is [the federal court's] duty to anticipate how that court would rule."  Bailey Farms, Inc. v. NOR-AM Chem. Co., 27 F.3d 188, 191 (6th Cir. 1994). In anticipating how a state's supreme court would rule, the federal court must consider decisions of the state's intermediate appellate courts unless it is "convinced by other persuasive data that

10

the highest court of the state would decide otherwise." West. v. AT&T Co., 311 U.S. 223, 237, 61 S. Ct. 179 (1940).

Here, as stated above, there appears to be no case law that applies the anti-lockout statute to a mortgagor-mortgagee relationship. Rather, the cases in which the statute has been applied have involved only lessor-lessee or landlord tenant relationships. See, e.g., Ann Arbor Tenants Union v. Ann Arbor YMCA, 229 Mich.App. 431 (1998); United Coin Meter Co. v. Lasala, 98 Mich.App. 238 (1980). Because there is no Michigan Supreme Court case law on the matter, this Court must "anticipate how that court would rule." See Bailey Farms, Inc., 27 F.3d at 191. A form of the anti-lockout statute has existed in Michigan since at least as early at 1872. See Shaw v. Hoffman, 25 Mich. 162 (1872). However, it appears to have never been applied in the mortgagor-mortgagee relationship. This Court, therefore, concludes that the Michigan Supreme Court would refuse to apply it here.

Even if the statute were applicable, Plaintiff does not allege in his Complaint that he was "ejected or put out" of his him in a "forcible manner," or that after being put out was "held and kept out by force." Absent such allegations, no claim for violation of Michigan's anti-lockout statute is made.

For these reasons, the Court finds that Plaintiff has not sufficiently alleged a legally cognizable claim for forcible ejection from lands under the Michigan anti-lockout statute. Therefore, CMI's motion for judgment on the pleadings on Count III will be **GRANTED**.

**D.     Plaintiff Has Sufficiently Alleged a Concert of Action.**

In order to withstand a motion to dismiss when alleging concert of action, "a plaintiff need only allege that the defendants were jointly engaged in tortuous activity as a result of which the plaintiff was harmed." Abel v. Eli Lilly and Co., et al., 418 Mich. 311, 338 (1984). Just

because Plaintiff knows which defendant specifically caused the injury, such identification does not preclude liability on a concert of action theory.  Id.

Here, Plaintiff alleges that CMI and GTJ, as well as other named defendants, all acted tortiously resulting in damage to Plaintiff.  Plaintiff alleges that CMI authorized GTJ to take Plaintiff's personal property when GTJ was completing its "trash out" of the property.  Plaintiff further alleges that all of the named defendants intentionally acted to interfere and dispossess Plaintiff of his real and personal property as well as interfered with Plaintiff's lawful possessory interest.  [Plaintiff's complaint at ¶ 40.]  Specifically, Plaintiff alleges that all of the Defendants are liable for the dispossession of his tools.  Thus, at this stage in the proceedings, Plaintiff has sufficiently alleged a "concert of action."  See Abel, 418 Mich. at 338.  Accordingly, Defendant's motion for judgment on the pleadings on Count IV is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's MOTION FOR JUDGMENT ON THE PLEADINGS **[Dkt. #10]** is **GRANTED**, in part, and **DENIED**, in part.  Defendant's Motion is **GRANTED** with respect to Count III of Plaintiff's Complaint but **DENIED** as to Counts I, II and IV.

Dated:  July 25, 2011                                       s/Gerald E. Rosen
                                                            Chief Judge, United States District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 25, 2011, by electronic and/or ordinary mail.

<u>s/Ruth A.Gunther</u>

Case Manager

(313) 234-5137